1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CLIFFTON RAY CURRIE,                      No.  2:13-cv-1062-KJM-EFB P

12                  Petitioner,

13            vs.                              FINDINGS AND RECOMMENDATIONS

14   RANDY GROUNDS,

15                  Respondent.

16

17          Petitioner is a state prisoner proceeding through counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered

19   against him on January 20, 2011, in the Sacramento County Superior Court on charges of first

20   degree robbery, first degree residential burglary, two counts of inflicting injury on a former

21   cohabitant, and assault by force likely to produce great bodily injury, with a prior felony

22   conviction for assault with a deadly weapon.  He seeks federal habeas relief on the following

23   grounds: (1) the trial court violated his Sixth Amendment rights when it denied his three motions

24   for substitute counsel; and (2) the evidence is insufficient to support his conviction for burglary.

25   Upon careful consideration of the record and the applicable law, the undersigned recommends

26   that petitioner's application for habeas corpus relief be denied.

27   /////

28   /////

                                                 1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury found defendant Cliffton Ray Currie guilty of first degree robbery (Pen.Code, § 211),FN1 first degree residential burglary (§ 459), two separate counts of inflicting injury on a former cohabitant (§ 273.5, subd. (a)), and assault by force likely to produce great bodily injury on another victim (§ 245, subd. (a)(1)).  The jury also found defendant's prior felony conviction of assault with a deadly weapon to be true.  With enhancements, the trial court sentenced defendant to 21 years in state prison.

> FN1. Undesignated statutory references are to the Penal Code.

> Defendant has two claims on appeal.  First, he contends the trial court erred by denying his *Marsden*FN2 motions to appoint him new counsel at trial.  Second, he claims his conviction for residential burglary must be reversed because he had the alleged victim's permission and consent to enter the residence with a key. We disagree and shall affirm.

> FN2. *People v. Marsden* (1970) 2 Cal.3d 118.

> **FACTUAL BACKGROUND**

> The offenses here arose from two incidents of domestic violence, one on August 6, 2010, and the other about two weeks later on August 21.

> On August 6, 2010, Deputy Sheriff Greg Saunders responded to "a domestic violence incident" at K.C.'s residence.  K.C. was at her apartment with a male visitor, J.W., when she heard someone trying to open the front door.  When J.W. went to the front door, the door flew open, hitting him in the face; defendant was standing in the doorway.  K.C. tried to intervene, and defendant grabbed her and flung her into the living room.

> J.W. left the apartment.  Defendant began to question K.C. about her relationship with J.W., got angry, and punched her in the left side of her neck with a closed fist.  K.C. fell to the floor as a result of being struck.  Defendant then told his cousin, who was also present, to watch the door while he went into K.C.'s bedroom and grabbed her cell phone.  Defendant then took K.C.'s keys from the kitchen counter.  When K.C. attempted to retrieve her cell phone from defendant, he struck her, again with a closed fist, in her left eye area.  Defendant and his cousin then left the apartment, and K.C. followed them into a parking lot.  Crime Scene Investigator Sam Bates arrived at K.C.'s apartment and noticed that she had swelling and redness on her left cheek; that J.W. had a slight

laceration along his left eyebrow; and that the apartment door was damaged.

On August 21, 2010, Deputy Sheriff Jeffrey Wallace and other officers were dispatched to do a welfare check at K.C.'s residence. K.C. told Deputy Wallace she and defendant had previously lived together in a relationship. K.C. said defendant did not have a key to her apartment.  She also had a cut on her lip because, she said, defendant threw a plastic lighter at her and hit her in the mouth. She also recounted the events of August 6 to Deputy Wallace and said defendant "kicked open the door" and "beat the shit out of [her]."

At trial, K.C.'s testimony was inconsistent with her statements to the two responding officers, Deputies Saunders and Wallace, as well as inconsistent with statements she had made to a 911 operator.  At trial, K.C. claimed those statements were lies to get her children back from Child Protective Services.  She said that defendant had a key to her apartment, that he never hit her, and that they were still together at the time of the incidents.

*People v. Currie*, No. C067290, 2011 WL 6647302. *1 (Cal.App.3 Dist. Dec. 22, 2011).

After the California Court of Appeal affirmed petitioner's judgment of conviction, petitioner filed a Petition for Review in the California Supreme Court.  Resp't's Lodg. Doc. No. 5.  That petition was summarily denied by order dated February 29, 2012.  Resp't's Lodg. Doc. No. 6.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

3

1             (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
2    determined by the Supreme Court of the United States; or

3             (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
4    State court proceeding.

5         For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

6    holdings of the United States Supreme Court at the time of the last reasoned state court decision.

7    *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

8    ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

9    *Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

10   what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

11   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

12   precedent may not be "used to refine or sharpen a general principle of Supreme Court

13   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

14   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

15   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

16   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

17   be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of

18   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

19   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

20        A state court decision is "contrary to" clearly established federal law if it applies a rule

21   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

22   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

23   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

24   writ if the state court identifies the correct governing legal principle from the Supreme Court's

25   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [1] *Lockyer v.*

26   _____

27        [1]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
28   384 F.3d 628, 638 (9th Cir. 2004)).

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

1    or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

2    presumption may be overcome by a showing "there is reason to think some other explanation for

3    the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

4    803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

5    but does not expressly address a federal claim, a federal habeas court must presume, subject to

6    rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___,

7    ___, 133 S.Ct. 1088, 1091 (2013).

8        Where the state court reaches a decision on the merits but provides no reasoning to

9    support its conclusion, a federal habeas court independently reviews the record to determine

10   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

11   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

12   review of the constitutional issue, but rather, the only method by which we can determine whether

13   a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

14   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

15   reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

16       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

17   *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

18   just what the state court did when it issued a summary denial, the federal court must review the

19   state court record to determine whether there was any "reasonable basis for the state court to deny

20   relief." *Richter*, 131 S. Ct. at 784.  This court "must determine what arguments or theories ...

21   could have supported, the state court's decision; and then it must ask whether it is possible

22   fairminded jurists could disagree that those arguments or theories are inconsistent with the

23   holding in a prior decision of [the Supreme] Court." *Id.* at 786.  The petitioner bears "the burden

24   to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*

25   *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

26       When it is clear, however, that a state court has not reached the merits of a petitioner's

27   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

28   /////

1   habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

2   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

3   **III.     Petitioner's Claims**

4           **A.  Motions for Substitute Counsel**

5           In petitioner's first ground for relief, he claims that the trial court violated his Sixth

6   Amendment rights when it denied his repeated motions for substitute counsel.  ECF No. 1 at 17-

7   22.[2]  Petitioner claims that he and his trial counsel "had a complete breakdown in

8   communication" which "resulted in a clear irreconcilable conflict between the two of them."  *Id.*

9   at 20.  Petitioner specifically complains that his trial counsel failed to contact "potential

10  witnesses," believed the victim was lying at the preliminary hearing when petitioner believed she

11  was telling the truth, and complained about petitioner in conversations with the victim.  *Id.* at 20-

12  21.  Petitioner also states that he and his trial counsel engaged in name calling.  *Id.*  He points out

13  that his trial counsel admitted to the trial judge that the communication between himself and

14  petitioner was "not great" and that there was an "incredible communication problem."  *Id.* at 21.

15  Petitioner also argues that the trial court failed to inquire into his claim that his trial counsel was

16  not communicating with him about his case.  *Id.* at 21.  Petitioner asserts that the "communication

17  barriers" between himself and his attorney made it impossible for him to have confidence that

18  there were "proper advisements, consultations, investigations, or any meaningful cooperative

19  relationship between the parties, which are all absolutely necessary in a criminal case where a

20  client's liberty is at stake."  *Id.* at 22.

21          The California Court of Appeal rejected these arguments, reasoning as follows:

22              **A. Procedural Background**

23              Defendant contends the trial court committed reversible federal
                constitutional error under the Sixth Amendment by denying
24              defendant's *Marsden* motions to have new counsel appointed to
                represent him at trial.  We disagree.
25

26

27   _____
        [2]   Page number citations such as this one are to the page numbers reflected on the court's
28   CM/ECF system and not to page numbers assigned by the parties.

Defendant made three *Marsden* motions.  His first *Marsden* motion was made before the start of trial on November 24, 2010. Defendant had four main concerns regarding his counsel: (1) defendant had five witnesses that his attorney refused to call; (2) his counsel did not speak up for him at the preliminary hearing; (3) his attorney called him a "black-ass monkey," laughed, and walked off when defendant confronted him about the name-calling; and (4) his attorney had a conflict of interest because the public defender's office had previously represented K.C.

In response to defendant's allegations, defense counsel countered that the five witnesses would not be called because they covered issues that were not in dispute.  Counsel formed his defense theory around the recanting victim, K.C.  Counsel said he did speak up on defendant's behalf at the preliminary hearing, and even asked for a dismissal because the victim was lying.  At that hearing, counsel did not ask K.C. some of the questions defendant had requested because counsel did not want to impeach K.C., especially since K.C. was testifying on defendant's behalf with her recantation. Counsel, who asked that the record reflect that both he and defendant were "Black male[s]," denied name-calling on his part, but admitted he laughed at defendant when defendant called him names.  With respect to the conflict of interest, counsel admitted the public defender's office had previously represented K.C., but claimed there was no actual conflict because he did not personally represent K.C. and he never looked at her files.FN3   Counsel admitted that communication with defendant was not great, but mentioned defendant would have the same problem with any attorney.  The court denied defendant's request for substitution.

FN3. On appeal defendant neither briefs nor argues *Marsden* error based on this alleged conflict of interest on the part of the public defender's office.  The overarching basis for the claim of *Marsden* error is the alleged communication breakdown between defendant and his counsel, resulting in an irreconcilable conflict.

In his second *Marsden* motion – made on the first day of trial, December 9, 2010 – defendant complained that counsel was not discussing the motions he was making.   Defendant again complained about the five uncalled witnesses, counsel's alleged name-calling, counsel's failure to speak on his behalf, and the issue regarding counsel's failure to get defendant's key to the victim's apartment.  FN4  Defendant also alleged that counsel was speaking to K.C. on behalf of the district attorney's office.

FN4. While there was no further discussion during the second *Marsden* hearing about defendant's possession of a key to the victim's apartment, counsel stated during the first *Marsden* hearing that he understood defendant "does have the key" and that this fact "will be brought into the trial."

In response to defendant's second *Marsden* motion, counsel admitted the allegations of communication problems were partially true, but explained defendant is verbose and says whatever he wants.  Counsel admitted that he did not want to impeach K.C.

because her recantation was beneficial to defendant's case. As for the witness testimony defendant wanted counsel to present, counsel described his analysis of that evidence as "incredibly collateral." The trial court denied defendant's second substitution request and attributed the disagreements between defendant and his counsel to tactical disagreements and defendant's failure to understand the criminal trial process. Instead, the court found counsel was making tactical decisions beneficial to defendant, especially with K.C.'s recanting testimony.

Defendant made his third and final *Marsden* motion toward the end of trial on December 20, 2010. Defendant alleged that his counsel (1) told him he could get a life sentence; (2) was working with the victim; and (3) failed to introduce letters into evidence that the victim had written.

In response, counsel denied telling defendant that he could receive a life sentence, and the court acknowledged defendant was reminded at the start of jury selection that the prosecution would not seek a life sentence. Counsel admitted contacting the victim, but only to return her calls and urge her not to flee to avoid testifying. Counsel responded that various attorneys at the public defender's office agreed the letters from K.C. were not particularly helpful to defendant's case. The letters discussed how much K.C. loved defendant and that she would drop the charges if defendant let her look at his cell phone. Counsel thought the collusion and communication problems between K.C. and defendant would be harmful to defendant's case. Again, counsel reiterated that the best tactic for defendant's trial was to allow K.C. to recant. The court held counsel did not improperly represent defendant. Any disagreements between defendant and counsel concerned tactics, and the evidence that counsel was eliciting from K.C. was consistent with the defense's theory.

**B. Analysis**

Substitute counsel should be appointed if "the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel" or if "the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Smith* (1993) 6 Cal.4th 684, 696.) The trial court is vested with discretion in deciding a *Marsden* motion, and the trial court's decision will be overturned on appeal only if there is "clear abuse of that discretion." (*Smith*, at p. 696.)

Defendant claims there was a clear breakdown in the communication between him and his attorney that resulted in an irreconcilable conflict between them, and thus the trial court erred by refusing to appoint substitute counsel. Defendant cites *People v. Robles* (1972) 2 Cal.3d 205 (*Robles*) and *People v. Lindsey* (1978) 84 Cal.App.3d 851 (*Lindsey*) to support his claims.

In *Robles*, the defendant testified at trial against his attorney's wishes. (*Robles, supra*, 2 Cal.3d at p. 214.) The *Robles* court held

this was just one factor in determining whether counsel should be discharged, and noted that only rarely will disagreement about whether the defendant should testify signal a breakdown in the attorney-client relationship. (*Id.* at p. 215.) Defendant's reliance on *Robles* is misguided in light of these distinct facts. ( Ibid.)

In *Lindsey*, the defendant and his appointed counsel disagreed about which individuals should be called as witnesses. (*Lindsey, supra*, 84 Cal.App.3d at pp. 859–860.) The appellate court held the decision regarding which witnesses to call is a tactical decision left to trial counsel. (*Id.* at p. 859.) The *Lindsey* court found the breakdown in the attorney-client relationship was caused by Lindsey's own stubbornness and failure to cooperate. (*Id.* at p. 860.) The same is true for defendant here because he called his attorney names, attempted to dictate trial tactics, and was disruptive during his trial.

Also, it is well established that reasonable disagreements about tactics are insufficient to compel discharge of appointed counsel. (*People v. Smith* (2003) 30 Cal.4th 581, 606, citing *People v. Hart* (1999) 20 Cal.4th 546, 604.) In *Smith*, the defendant complained that his counsel inadequately cross-examined a witness, failed to call certain witnesses, did not follow his advice, and was not trustworthy. (*Smith, supra*, 30 Cal.4th at pp. 603–605.) The *Smith* court ruled that a disagreement regarding trial tactics is generally insufficient to discharge counsel and, therefore, there was no abuse of discretion. (*Id.* at p. 606.)

In this case, the record clearly reflects that the differences between defendant and counsel arise [sic] from tactical disagreements. Defendant's chief complaints include counsel's failure to call certain witnesses and introduce certain evidence.FN5 According to the trial court, these grievances concerned tactical disagreements, and we agree. Counsel's effort to encourage the alleged victim to testify was the best evidence in defendant's favor. The trial court found that counsel's tactics concerning K.C.'s recantation were consistent with the defense theory. Additionally, based on defendant's comment that counsel is required to call any witnesses he requests, it was clear defendant misunderstood that counsel makes the tactical decisions in the case.

FN5. As noted, defendant also complained that counsel failed to speak up on his behalf at the preliminary hearing but counsel disagreed, noting that he had even asked for a dismissal because the victim was lying.

Furthermore, "a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith, supra*, 6 Cal.4th at p. 696.) Defendant's conflict with counsel seems to be of his own doing, and counsel even admitted that defendant's issues with counsel would arise regardless of his attorney. Not only did defendant call counsel names, but defendant seemed to engage in calculated outbursts in front of the jury during trial (e.g., uttering that no one ever told him he could get "life for

this shit," when he had been informed previously that such a sentence was not possible).

We conclude the trial court did not abuse its discretion in denying defendant's *Marsden* motions.

*Currie*, 2011 WL 6647302, at **2-4.

Pursuant to the decision in *People v. Marsden*, 2 Cal.3d 118 (1970), when a criminal defendant in California asserting inadequate representation seeks to discharge appointed counsel and substitute another attorney, the trial court must permit him to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  The denial of a *Marsden* motion to substitute counsel can implicate a criminal defendant's Sixth Amendment right to counsel and is properly considered in federal habeas corpus.  *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds* by *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc).  On federal habeas review, the relevant inquiry is whether the state trial court's disposition of the *Marsden* motion violated petitioner's right to counsel because the asserted conflict "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  *Schell*, 218 F.3d at 1027-28.

The "[l]oss of confidence by the defendant in his counsel weighs heavily in the defendant's favor when he seeks to substitute counsel," unless the breakdown in the relationship flows from a defendant's own conduct.  *Hudson v. Rushen*, 686 F.2d 826, 832 (9th Cir. 1982).  As the Ninth Circuit has explained:

> [T]he basic question is simply whether the conflict between Schell and his attorney prevented effective assistance of counsel.... It may be the case, for example, that because the conflict was of Schell's own making, or arose over decisions that are committed to the judgment of the attorney and not the client, in fact he actually received what the Sixth Amendment required in the case of an indigent defendant . . . .

*Schell*, 218 F.3d at 1026; *see also Romero v. Furlong*, 215 F.3d 1107, 1114 (10th Cir. 2000) ("A breakdown in communication warranting relief under the Sixth Amendment cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation.").  The Sixth

11

1   Amendment guarantees effective assistance of counsel, but not a "meaningful relationship"

2   between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

3          The United States Supreme Court has not specifically addressed the level of inquiry

4   required when a *Marsden* motion or other similar motion is made by a criminal defendant.  When

5   assessing a trial court's ruling on a *Marsden* motion in the context of a federal habeas corpus

6   proceeding, the Ninth Circuit has held that the Sixth Amendment requires only "an appropriate

7   inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the

8   case goes forward." *Schell*, 218 F.3d at 1025.  *See also Plumlee v. Masto*, 512 F.3d 1204, 1211

9   (9th Cir. 2008) ("Under our precedents, *see, e.g., Schell*, 218 F.3d at 1025-26, Judge Lane had a

10  duty to inquire into the problems with counsel when they were first raised, and he did so").

11         Here, the trial court held three *Marsden* hearings, inquired into counsel's representation

12  and petitioner's complaints, and satisfied itself that the representation was adequate.  The trial

13  judge gave petitioner a full opportunity to explain his reasons for wanting to substitute another

14  attorney for his appointed trial counsel.  This procedure complied with the Sixth Amendment.

15  *See Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007) (inquiry was adequate when court

16  determined that the lines of communication were open and counsel was competent); *United States*

17  *v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (inquiry was adequate where defendant 'was given

18  the opportunity to express whatever concerns he had, and the court inquired as to [defense

19  attorney's] commitment to the case and his perspective on the degree of communication."); *cf.*

20  *Schell*, 218 F.3d at 1027 (remanding for an evidentiary hearing where the state court failed to

21  make any inquiry into alleged deterioration of attorney-client relationship and the substance of the

22  petitioner's claims).

23         After reviewing the record, the California Court of Appeal found that petitioner "called

24  his attorney names, attempted to dictate trial tactics, and was disruptive during his trial." *Currie*,

25  2011 WL 6647302, at *3.  Thus, at least part of the breakdown in communications between

26  petitioner and his trial counsel resulted from petitioner's own conduct.  The trial court concluded

27  that the communication problems between petitioner and his trial counsel had not resulted in a

28  complete breakdown of the attorney-client relationship or counsel's inability to present a defense

12

at trial.  This latter conclusion was later borne out by the fact that defense counsel was able to mount a competent defense in this case.  This court has reviewed the transcripts of petitioner's *Marsden* hearings and does not find that a conflict between petitioner and his trial counsel had become so great that it resulted in a constructive denial of petitioner's Sixth Amendment right to counsel.  *Schell*, 218 F.3d at 1027-28.  To the extent that petitioner's lack of trust flowed from the actions his trial counsel took or failed to take during the course of the representation, this does not establish a Sixth Amendment violation because the conflict "arose over decisions that are committed to the judgment of the attorney and not the client."  *Schell*, 218 F.3d at 1026.

In short, under the circumstances of this case, the trial court was not unreasonable in concluding that petitioner's trial counsel was providing competent representation.  Accordingly, petitioner is not entitled to relief on his *Marsden* claims.

### B.  Sufficiency of the Evidence

In his second ground for relief, petitioner claims that the evidence was insufficient to support his conviction for burglary because the victim testified that she and petitioner lived together at the time of his arrest and he had a key to the apartment.  ECF No. 1 at 22, 24.  *See also* Reporter's Transcript on Appeal (RT) at 116-18, 165-66.  Petitioner argues that this shows he had "an unconditional right of entry into the apartment."  *Id.* at 23.  He claims that under California law he could not be found guilty of burglary of his own home.

The California Court of Appeal found there was sufficient evidence introduced at petitioner's trial to support his burglary conviction.  The court reasoned as follows:

> **II. Substantial Evidence of Burglary**
>
> Defendant further contends that his residential burglary conviction needs to be reversed because he had the victim's (K.C.'s) permission and consent to enter the apartment with a key.  We disagree.  Because there was substantial evidence that allowed a reasonable jury to convict defendant of first degree burglary, we shall uphold that conviction.
>
> On appeal, we will uphold the conviction if a reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt.  (*People v. Cuevas* (1995) 12 Cal.4th 252, 274.)  Although this case involves a recanting victim, there is still substantial evidence that defendant did not have the right to enter the apartment.  Evidence presented through J.W.'s 911 call, K.C.'s

13

911 call, Deputy Saunders's testimony, and Deputy Wallace's testimony would allow a reasonable jury to find defendant guilty of first degree burglary.

There is substantial evidence that defendant did not have a possessory right or K.C.'s consent to enter the apartment.  In J.W.'s 911 call, he said K.C.'s ex-boyfriend (referring to defendant) tried to bust in the door and started hitting K.C.  In K.C .'s 911 call, she stated that her "ex[-]boyfriend [(referring to defendant)] just came over and kicked in [her] door, stole [her] cell phone and [her] car keys and . . . socked [her] in [her] face."  When the operator asked her if she knew where defendant lives, K .C. responded that he "stays on Polk Avenue [sic]" in number 89 of a townhome complex; this suggests he did not live with her at the time.

When Deputy Saunders took K.C.'s statement regarding the August 6 incident, she told him the front door flew open and hit J.W. in the face.

Deputy Wallace took K.C.'s statement regarding the August 21 incident.  At that time she represented that the relationship was on and off for a couple of months; that she no longer lived with defendant; and that they broke up two and a half months earlier because defendant would beat her.

Defendant contends K.C.'s testimony at trial is dispositive because, as the burglary victim, she testified that defendant continued to live with her and had a key to the apartment.  Although the victim's testimony weighs in favor of the defense, the standard on appeal is not whether there is substantial evidence that would lead a jury to come to a different conclusion, but rather, whether the conviction at issue is supported by substantial evidence.  (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Defendant relies heavily on *People v. Gauze* (1975) 15 Cal.3d 709 to support his contention that he had a possessory right to enter the apartment with the consent of the alleged victim.  The facts of *Gauze* are distinguishable.  In *Gauze*, the defendant pointed and fired his gun at his roommate.  (*Id.* at p. 711.)  Among his convictions, defendant Gauze was found guilty of burglary by entering his own apartment with the intent to commit assault.  (*Ibid.*)  The Supreme Court reversed the burglary conviction and held that the "defendant [could not] be guilty of burglarizing his own home.  His entry into the apartment, even for a felonious purpose, invaded no possessory right of habitation." (*Id.* at p. 714.)

The facts of the present case differ from *Gauze* because defendant's possessory interest in the victim's apartment and consent to enter is questionable at best, and the victim's trial testimony that defendant had a key and was living in the apartment conflicted with the 911 calls and her statements to Deputies Saunders and Wallace.  Additionally, defendant is not listed on the lease; nor does he contribute to the rent.  Finally, the jury was properly instructed that if they found defendant had a possessory interest or consent to enter, no burglary had taken place.

1      We conclude there is substantial evidence supporting the burglary
       conviction.
2

3   *Currie*, 2011 WL 6647302 at **4-6.

4       The Due Process Clause "protects the accused against conviction except upon proof

5   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

6   charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

7   conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

8   rational trier of fact could have found the essential elements of the crime beyond a reasonable

9   doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under

10  Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

11  reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

12  U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

13  of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos*

14  *v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).  Sufficiency of the evidence claims in federal

15  habeas proceedings must be measured with reference to substantive elements of the criminal

16  offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16.

17      In conducting federal habeas review of a claim of insufficient evidence, "all evidence

18  must be considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d

19  1112, 1115 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences

20  to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

21  inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

22  2060, 2064 (2012) (per curiam ) (citation omitted).  "'Circumstantial evidence and inferences

23  drawn from it may be sufficient to sustain a conviction.'"  *Walters v. Maass*, 45 F.3d 1355, 1358

24  (9th Cir. 1995) (citation omitted).

25      "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

26  the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

27  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  Because this case is governed by the

28  AEDPA, this court owes a "double dose of deference" to the decision of the state court. *Long v.*

1  *Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th

2  Cir. 2011), *cert. denied* ___ U.S. ___, 132 S.Ct. 2723 (2012)).

3       Cal. Penal Code § 459 provides that "every person who enters any . . . apartment . . . with

4  intent to commit grand or petit larceny or any felony is guilty of burglary." Under California law

5  a defendant cannot be found guilty of "burglarizing his own home." *People v. Gauze*, 15 Cal.3d

6  709 (1975). In this case, for the reasons expressed by the California Court of Appeal, a rational

7  trier of fact could have found beyond a reasonable doubt, that petitioner did not occupy or reside

8  in the victim's apartment at the time of the assault and was therefore not "burglarizing his own

9  home." Specifically, there was competent evidence aside from the victim's trial testimony that

10 petitioner and the victim had broken off their relationship and petitioner had moved to another

11 location prior to the events that led to his arrest. Thus, the decision of the California Court of

12 Appeal rejecting petitioner's claim that the evidence was insufficient to support the burglary

13 charge is not contrary to or an unreasonable application of *In re Winship* to the facts of this case.

14 Certainly, the decision is not "so lacking in justification that there was an error well understood

15 and comprehended in existing law beyond any possibility for fairminded disagreement."

16 *Richter*,131 S.Ct. at 786-87. Accordingly, petitioner is not entitled to federal habeas relief on this

17 claim.

18 **IV. Conclusion**

19       For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

20 application for a writ of habeas corpus be denied.

21       These findings and recommendations are submitted to the United States District Judge

22 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

23 after being served with these findings and recommendations, any party may file written

24 objections with the court and serve a copy on all parties. Such a document should be captioned

25 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

26 shall be served and filed within fourteen days after service of the objections. Failure to file

27 objections within the specified time may waive the right to appeal the District Court's order.

28 *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  May 5, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17